UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRIAN C. JACKSON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-16-1278 |
| | § | |
| NFL DISABILITY & NEUROCOGNITIVE BENEFIT PLAN*, et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court are (1) the defendants' motion for a judgment on the administrative record and request for leave to pursue attorneys' fees (Dkt. 21); (2) the plaintiff's motion to supplement the administrative record (Dkt. 22); and (3) the plaintiff's motion to remand the claim back to the plan administrator (Dkt. 25 at 9). Having considered the motions, responses, replies, administrative record, and the applicable law, the court is of the opinion that (1) the defendants motion for a judgment on the administrative record and request for leave to pursue attorneys' fees (Dkt. 21) should be GRANTED; (2) the plaintiff's motion to supplement the administrative record (Dkt. 22) should be DENIED; and (3) the plaintiff's motion to remand the claim back to the plan administrator (Dkt. 25 at 9) should be DENIED.

**I. BACKGROUND**

**A. Factual Background**

This case is about an appeal of a denial of disability benefits. Dkt. 7-1. The plaintiff, Brian Jackson, is a former professional football player with the National Football League ("NFL"). *Id*. In April 2010, Brian Jackson joined the New York Jets. *Id*. at 2. In September 2010, he joined the New York Giants and appeared in twelve games. *Id*. In October 2011, Jackson was signed by the

St. Louis Rams and placed on injured reserve. In 2012, Jackson left the NFL after accruing two seasons of service time under the Plan. Dkt. 7-1 at 2. During Jackson's football career, he had several documented injuries. Dkt. 7-1 at 3. His medical diagnostics showed issues with his spine, knee, and pelvis. *Id.*

Jackson applied for Line of Duty ("LOD") disability benefits for the injuries he sustained during his football career. *Id.* His claim was denied. Dkts. 7-1, 25 at 1. Jackson is suing the NFL Disability & Neurocognitive Benefit Plan ("NFL Plan" or the "Plan") and the NFL Disability Board ("Disability Board") under the Employee Retirement Income Security Act of 1974 ("ERISA") to overturn the denial of his claim for LOD disability benefits. Dkt. 7-1 (citing 29 U.S.C. § 1001 *et seq.*).

**B.     The Plan**

The NFL Plan provides a partial disability benefit to eligible football players. Dkt. 21-1 at 1. The terms of the plan are outlined in the Plan Guide. Dkt. 21-2 at 1–73 (Ex. A, Vol. 1). The NFL Plan is administered by the six voting-member Disability Board, made up of three NFL club ownership representatives and three former NFL players. Dkt 21-2 at 7. The three player representatives are appointed by the NFL Players Association and three club ownership representatives are appointed by the NFL Management Committee. The Disability Board is the "named fiduciary" of the Plan and is responsible for administering the Plan. Dkt. 21-2 at 40. Under the Plan, the Disability Board is granted "full and absolute discretion, authority and power to interpret, control, and manage" the Plan and "full and absolute discretion" to determine if a claimant is eligible for benefits. *Id.* at 45.

2

The NFL Plan is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(3)(2)(A), 1002(37)(A), and the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141–197, also known as the "Taft–Hartley Act." *Id.* at 6; Dkt. 7-1 at 2.

To qualify for LOD benefits, the claimant must show that he has a "substantial disablement" stemming from his professional football activities. Dkt. 21-2 at 26. The Plan further specifies that orthopedic impairments must meet minimum thresholds under the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (Fifth Edition, Chicago Illinois) ("AMA Guide"). Dkt. 21-2 at 29 (plan provisions); Dkt. 21-4 (excerpted portions of AMA Guide). The rating thresholds are:

> (a) a 38% or greater loss of use of the entire lower extremity;
> (b) a 23% or greater loss of use of the entire upper extremity;
> (c) an impairment to the cervical or thoracic spine that results in a 25% or greater whole body impairment;
> (d) an impairment to the lumbar spine that results in a 20% or greater whole body impairment; or
> (e) any combination of lower extremity, upper extremity, and spine impairments that result in a 25% or greater whole body impairment.

Dkt. 21-2 at 29. Up to 3% may be added to the rating in each of these categories for "excess pain." *Id*.

## C. Jackson's Application for LOD Benefits

On December 8, 2014, Jackson submitted a claim to the plan seeking LOD disability benefits for his orthopedic impairments. Dkt. 7-1 at 4; Dkt. 21-3 at 2. On December 30, 2014, a Plan-neutral physician, Dr. Hussein Elkousy, examined Jackson.[1] *Id*. Dr. Elkousy found that Jackson has 7% body part impairment ("BPI") in the upper extremity, 16% BPI in the lower extremity, and 0% whole

---

[1] The defendants offer various evidence in support of the neutrality of the physicians. Dkt. 21-2 at 50 (Plan Guide requirements for a neutral physician); Dkt 21-5 at 3 (relevant details of Dr. Elkousy's contract).

3

person impairment ("WPI") in his cervical spine. Dkt. 21-3 at 10–29. This converts to 4% WPI in the upper extremity, 5% WPI in the lower extremity, and 10% combined WPI. *Id*. The ratings reflect an extra 1% added to the combined WPI and 3% added to the lower extremity BPI for excess pain. Dkt. 21-3 at 11, 29. On January 12, 2015, the Disability Initial Claims Committee (the "Committee") unanimously denied Jackson's LOD claim because the Committee found that Jackson's impairments did not satisfy the Plan's "substantial disablement" requirement. Dkt. 21-3 at 37, 43.

On February 16, 2015, Jackson appealed the Committee's decision to the Disability Board, and provided additional medical records to support his claim. Dkt. 21-3 at 46 (appeal); 47–285 (medical records). On April 2, 2015, a second Plan-neutral physician, Dr. Paul Saenz, examined Jackson. Dkt. 21-3 at 289–305. Dr. Saenz found that Jackson has 16% BPI in the upper extremity, 26% BPI in the lower extremity, and 5% WPI in the cervical spine. Dkt. 21-3 at 290. This converts to 10 % WPI in the upper extremity, 10% WPI in the lower extremity, and 23% combined WPI. *Id.* The ratings reflect no added percentage points for excess pain. Dkt. 21-3 at 290. *Id*. On May 20, 2015, the Disability Board unanimously denied Jackson's appeal on his LOD claim because the Disability Board found that Jackson's impairments did not satisfy the Plan's "substantial disablement" requirement. Dkt. 21-3 at 314, 318–320. The Disability Board noted in its denial that neither Dr. Elkousy's nor Dr. Saenz's ratings met the Plan's threshold for impairment and that Jackson did not submit any evidence that showed he had an impairment above the Plan's thresholds. *Id*.

On May 6, 2016, Jackson filed a complaint under ERISA against the Plan and the Disability Board as the plan administrator, and, later, he amended that complaint. Dkts. 1, 7-1.[2] On January 6, 2017, the defendants filed a motion for judgment on the administrative record and a request for leave to seek attorneys' fees. Dkt 21. Jackson responded and moved for a remand to the plan's administrator. Dkt. 25. The defendants replied. Dkt. 26.

On January 20, 2017, Jackson filed a motion to supplement the administrative record. Dkt. 22. The defendants responded and Jackson replied. Dkts. 27, 28.

## II. LEGAL STANDARD

ERISA permits a person denied benefits under an employee benefit plan to challenge that denial in federal court. *See* 29 U.S.C. § 1132(a)(1)(B) (beneficiary may bring suit to enforce rights under benefit plan); *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108, 128 S. Ct. 2343 (2008). Under ERISA, if the Plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the Plan's terms, the Court must review a decision to deny benefits only for abuse of discretion. *Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 694 F.3d 557, 566 (5th Cir. 2012). "In the ERISA context, "[a]buse of discretion review is synonymous with arbitrary and capricious review." *Cooper v. Hewlett–Packard Co.*, 592 F.3d 645, 652 (5th Cir. 2009).

A fiduciary's decision must be affirmed if it is supported by substantial evidence. *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis v. Liberty Life Assur. Co. of Boston*,

---

[2] On July 11, 2016, Jackson filed an unopposed motion for leave to file an amended complaint. Dkt. 7. The court granted the motion. Dkt. 8. The defendants' motion references the amended complaint attached in the motion to amend (Dkt. 7-1), which was later docketed separately as Dkt. 29.

5

394 F.3d 262, 273 (5th Cir. 2004) (quoting *Deters v. Sec'y of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986)). The district court considers evidence in the administrative record to determine if the decision of a plan administrator is supported by substantial evidence. *Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (en banc), *overruled on other grounds* by *Glenn*, 554 U.S. 105. "[R]eview of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007).

When the plan administrator who controls disability determinations also pays out disability benefits, the court must account for the inherent conflict of interest. *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 508 (5th Cir. 2013). "[C]onflicts are but one factor among many that a reviewing judge must take into account." *Id.* (quoting *Glenn,* 554 U.S. 105 at 116). This factor may "act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Glenn*, 554 U.S. 105 at 128; *see e.g. Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 469 (5th Cir. 2010) (applying greater weight to the conflict of interest factor when the benefits denial decision suggests "procedural unreasonableness"); *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 249 (5th Cir. 2009) (holding that conflict of interest is not a significant factor if there is no history of biased claims or evidence that the conflict effected the benefits decision). Besides making a general allegation of bias, Jackson has not introduced any evidence or alleged any facts regarding bias or a conflict of interest that affected the Disability Board's decision. Dkt. 7-1 at 7. Therefore, the court finds that inherent conflict of interest is not a significant factor in this case.

6

## III. ANALYSIS

A.   **Motion to Supplement the Administrative Record**

Jackson filed a motion to supplement the administrative record, arguing that the record is incomplete. Dkt. 22. In an ERISA benefits claim, the court generally only considers evidence from the administrative record "unless the [supplemental] evidence relates to how the administrator had interpreted the plan in the past or would assist the court in understanding medical terms and procedures." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011) (citing *Vega*, 188 F.3d at 299–300). Evidence outside the administrative record may also be admitted for the purposes of addressing "the completeness of the administrative record; whether the plan administrator complied with ERISA's procedural regulations; [or] the existence and extent of a conflict of interest created by an administrator's dual role in making benefits determinations and funding the plan." *Id*.

Jackson's proposed supplement includes: (1) e-mail exchanges setting up Jackson's two appointments with Plan-neutral physicians (Dkt. 22, Ex. A at 1–2, 25–26); (2) e-mails from the Plan to Dr. Saenz reminding him of the plan procedures prohibiting external conversations with Jackson (*Id.* at 45–47); (3) memoranda with completed evaluation templates (*Id.* at 4–24; 28-43), and (4) a letter from Jackson to the Plan that argues the WPI calculation is incorrect and that a different calculation of WPI should be used (*Id.* at 48–58). Jackson argues that the failure to include these documents in the administrative record violates a federal regulation that the Plan must identify, disclose, or produce documents that the Plan used in making its adverse determination. Dkt. 22 at 2 (citing 29 C.F.R. § 2560.503-1(j)).

First, Jackson seeks to supplement the record with e-mail exchanges that appear to be merely administrative in nature, setting up appointments and discussing protocol for contact between Dr.

7

Saenz and Jackson. Dkt. 22, Ex. A at 1–2, 25–26. The court finds that these e-mails do not contain any information that could have plausibly been used by the Disability Board in making its adverse determination. Because these e-mails appear to be irrelevant to any decision regarding Jackson's benefits, Jackson's motion to supplement the record with these e-mails should be denied. *Id*.

Second, Jackson seeks to supplement the record with two memoranda with "completed evaluation templates" sent to Dr. Elkousy and Dr. Saenz. *Id*. at 4–24, 28-43. Jackson also cites to these memoranda in his recitation of facts in his response brief. Dkt. 25 at 3–4. These memoranda originated from Paul Scott, the Plan's Director of Disability Benefits, and were e-mailed to the plan physicians after they examined Jackson. Dkt. 22, Ex. A at 4, 28. Though memoranda are described as "templates," the physicians' impairment ratings from their examinations of Jackson were pre-filled into the template. *Id*. These two memorandum do not contain any new or different impairment ratings than those already reported in the administrative record..[3] *Id*. Nor is there any evidence that the Disability Board used these memoranda in lieu of the physicians' reports provided in the administrative record. Dkt. 21-3 at 10–29, 289–305. Jackson admits that the defendants "denied Jackson's appeal based on Dr. Elkousy and Dr. Saenz's impairment ratings." Dkt. 25 at 4. Therefore, the court finds that there is no evidence the Disability Board used these memoranda in making its adverse determination and they are not relevant to the court's review of the Disability Board's decision. Therefore, Jackson's motion to supplement the record with these documents should be denied. Dkt. 22, Ex. A at 4–24, 28–43.

---

[3] Of note, neither template included an excessive pain additive with the impairment ratings, but rather instructed the physician to "[p]lease include pain where you feel is appropriate." Dkt. 22-1 at 5, 29; *see supra* p. 12 (discussing Dr. Elkousy's and Dr. Saenz's evaluation of excessive pain).

Third, Jackson seeks to supplement the record with his letter to the Plan challenging the calculation of the combined WPI rating. *Id*. at 48–58. The letter certainly demonstrates Jackson's confusion regarding the calculation of combined WPI following his receipt of the final decision of the Disability Board. *Id*. From the court's perspective, the information and the arguments Jackson made in the letter and the Disability Board's lack of response has been superceded by the more recent explanations offered by both parties about the combined WPI calculation in the current litigation.[4] The letter was sent after the Disability Board made its final determination to deny Jackson's benefit. *Id.* Because of this timing, the Disability Board could not have possibly relied on this letter in making its adverse determination. Therefore, Jackson's motion to supplement the record with this letter should be denied. *Id*.

The court concludes that Jackson's proposed supplements to the administrative record do not contain any information that the Disability Board used in making its final adverse determination nor do any of the proposed supplements assist the court's review of the Disability Board's decision. Therefore, Jackson's motion to supplement the administrative record is DENIED. Dkt. 22.

**B.     Motion for Judgment on the Administrative Record**

The defendants filed a motion for judgment on the administrative record and for leave to pursue attorneys' fees. Dkt. 21. Jackson argues that the Disability Board abused its discretion by making the following errors: (1) by relying on a miscalculation of Jackson's combined WPI rating;

---

[4] Furthermore, the Fifth Circuit has held that the "full and fair review" requirement does not require the plan administrator to consider evidence after the appeal is closed. *Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 311 (5th Cir. 2015). The Disability Board had no obligation under ERISA to re-open their review based on the contents of this letter after it made its final determination.

(2) by relying on a report from Dr. Saenz that failed to account for pain; and (3) by ignoring Jackson's medical records. Dkt. 7-1 at 5–7; Dkt. 25 at 6–7.

   1. *Calculation of WPI*

Jackson argues that the Disability Board erred when it relied on Dr. Saenz's calculation of a combined WPI of 23%. Dkt. 7-1 at 5–6; Dkt. 25 at 5 . The Plan requires a total combined WPI of 25% or greater to qualify for benefits. Dkt. 21-2 at 29. Jackson initially argued that Dr. Saenz should have added the 10% upper extremity WPI, the 10% lower extremity WPI, and 5% cervical spine impairment to find a 25% combined WPI. Dkt. 7-1 at 5; Dkt. 25 at 5. The defendants' motion explains that Dr. Saenz correctly followed the AMA Guide in calculating the summation of these numbers. Dkt. 21-1 at 13–14. The AMA Guide instructs physicians to use a "Combined Value Chart" (Dkt. 21-4 at 26) rather than to directly add the partial body impairments in order to avoid a summation that exceeds 100%; *see also* Dkt. 25 at 5–6 (Jackson's response brief acknowledging the AMA Guide instructions on determining a combined WPI). The court agrees with the defendants that Dr. Saenz's combined WPI calculation of 23% reflects the result of using the chart per the instructions in the AMA Guide. Dkt. 21-1 at 14; Dkt. 21-4 at 26.

In his response, Jackson concedes that the AMA Guide's method of calculation results in a combined WPI of less than 25%. Dkt. 25 at 5–6. However, he also argues that there is a discrepancy in the Combined Value Chart based on the order in which the partial body impairments are combined. *Id*. The Combined Value Chart states that "[if] three or more impairment values are to be combined, select any two and find their combined value. . . . Then use that value and the third value to locate the combined value of all." Dkt. 21-4 at 27; *see also* Dkt. 21-1 at 15 (demonstrating use of the chart). If the chart is used to first combine 10% and 10%, then the resulting value is

combined with 5%, the combined WPI is 23%. *Id.* However, if the chart is used to first add 10% and 5%, then the resulting value is combined with 10%, the combined WPI is 24%. *Id.*

The defendants explain that the difference between the 23% and 24% combined WPI arises from rounding the results of an interim calculation in the underlying equation that is used to generate the chart. Dkt. 26, Ex. A (citing to Dkt. 21-4 at 27). Nevertheless, 23% and 24% are both less than the required 25% WPI threshold for the LOD benefits. Jackson admits the alternate result "does not automatically qualify [him] for LOD benefits," but it shows "just how close [he] was." Dkt. 25 at 7. Just because Jackson's combined WPI was close to the minimum to qualify for benefits, it still did not actually rise to the threshold required to qualify for disability benefits under the Plan. Therefore, any difference between these two calculation is negligible. The court finds that the Disability Board did not abuse its discretion by denying Jackson's disability benefits for not meeting the required 25% WPI threshold.

### 2. Accounting for Pain in the Combined WPI Rating

Jackson argues that the Disability Board erred in relying on Dr. Saenz's report because he failed to add additional points for excess pain in the calculation of the combined WPI. Dkt. 7-1 at 5; Dkt. 25 at 8–9. The defendants argue that the AMA Guide states that the ratings themselves already account for "commonly associated pain." Dkt. 21-1 (quoting Dkt. 21-4 at 21). There is no evidence that Dr. Saenz overlooked Jackson's pain in his evaluation and Dr. Saenz noted Jackson's pain complaints in his narrative. Dkt. 21-3 at 299–300. Dr. Elkousy may have added additional points for excess pain, but he also gave Jackson much lower BPI and WPI ratings overall. Dkt. 21-3 at 11, 29.

"The job of weighing valid, conflicting professional medical opinions is not the job of the courts; that job has been given to the administrators of ERISA plans." *Corry*, 499 F.3d at 401 (citing

*Gothard v. Metro. Life Ins. Co.*, 491 F.3d 246, 250 (5th Cir. 2007)). Here, the Disability Board was presented with two different medical professionals' evaluations that may have slightly differed, but still yielded the same outcome of a combined WPI below the 25% threshold. Jackson argues that the Disability Board had the option of referring the two reports to a Medical Advisory Physician for interpretation.[5] Dkt. 25 at 8. However, it is within the Disability Board's discretion to choose not to seek a third opinion when the results of the two existing medical opinions concurred with each other. *Corry*, 499 F.3d at 401. Therefore, the court finds that the Disability Board did not abuse its discretion when it denied Jackson's LOD disability claim by relying on a combined WPI rating without an additive for excessive pain.

*3. Jackson's Medical Records*

Jackson claims that the Disability Board did not consider his medical records when it denied his claim. Dkt. 7-1 at 6; Dkt. 25 at 7. Jackson submitted 239 pages of medical records and related documents with his appeal to the Disability Board. Dkt. 25 at 7 (citing Dkt. 21-3 at 47–285). Jackson claims these records were "ignored" by the Disability Board because they did not include impairment ratings. *Id*. at 8. However, the court finds that the Disability Board considered Jackson's medical records on at least two occasions. Dkt. 21-3 at 298, 319. First, Dr. Saenz's narrative summary that he provided to the Disability Board stated:

> "Prior to today's evaluation, medical records were reviewed. This consisted of team-maintained injury and treatment logs, physician progress notes, results of diagnostic studies, and operative reports. Inclusive in today's evaluation was a thorough medical history pertinent to injuries sustained by Mr. Jackson during his collegiate and professional years in football."

---

[5] To the extent that Jackson objects that "[The AMA Guide] is not part of the administrative record" (Dkt. 25 at 8), the court finds that the AMA Guide assists the court in understanding medical practice and terminology and therefore finds it appropriate to use the excerpts provided by the defendants as a supplement to the administrative record. *See Crosby*, 647 F.3d at 263.

Dkt. 21-3 at 298. Further, Dr. Saenz's narrative included a review of X-rays and MRI diagnostic tests in Jackson's medical history. Dkt. 21-3 at 303–304.

Second, the letter explaining the Disability Board's final decision states that "the Disability Board reviewed all the medical records in your file, including the medical records that you submitted on appeal. . ." Dkt. 21-3 at 319. Further, Jackson does not point to any relevant item in his medical records that provide evidence that the Disability Board ignored or misinterpreted when making its decision. Dkt. 25. Therefore, the court concludes that the Disability Board properly considered Jackson's medical records in reaching its decision and it did not abuse its discretion by ignoring Jackson's medical records.

Considering these three arguments and the administrative record, the court concludes that the Disability Board made its decision based on substantial evidence and did not abuse its discretion in denying Jackson's claim for LOD disability benefits. The defendants' motion for judgment on the administrative record is GRANTED.

**C.     Leave to Pursue Attorneys' Fees**

The defendants request the court's leave to file a motion for attorneys' fees. Dkt. 21 at 1. ERISA allows parties to pursue reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(1). Because the court has granted judgment in the defendants' favor, the defendants' request for leave to file a motion for attorneys' fees is GRANTED. Dkt. 21 at 1.

**D.     Motion to Remand the Claim to the Plan Administrator**

Finally, in his response, Jackson moves the court to remand the claim to the Disability Board because he was not given the opportunity for a "full and fair review." Dkt. 25 at 9 (citing 29 U.S.C. § 1133). Specifically, Jackson claims that Disability Board's failure to provide Jackson a copy of

the AMA Guide is a fatal flaw in his ability to review and challenge the denial of his disability claim. *Id*.

When denying a claim, an ERISA plan administrator must follow a procedure that "(1) provide[s] adequate notice; (2) in writing; (3) setting forth the specific reasons for such denial; (4) written in a manner calculated to be understood by the participant; and (5) afford[s] a reasonable opportunity for a full and fair review by the administrator." *Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 310 (5th Cir. 2015) (citing § 1133). "Remand to the plan administrator for full and fair review is usually the appropriate remedy when the administrator fails to substantially comply with the procedural requirements of ERISA." *Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 157 (5th Cir. 2009). However, "[t]echnical noncompliance with ERISA procedures will be excused so long as the purpose of section 1133 has been fulfilled." *Id*. (quoting *Robinson v. Aetna Life Ins.*, 443 F.3d 389, 393 (5th Cir. 2006)). "The purpose of section 1133 is to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial," *Id*. (quoting *Schneider v. Sentry Long Term Disability*, 422 F.3d 621, 627–28 (7th Cir. 2005)). The Fifth Circuit opined that " mandating review of the specific ground for a [benefits decision] is consistent with our policy of encouraging the parties to make a serious effort to resolve their dispute at the administrator's level before filing suit in district court." *Robinson,* 443 F.3d at 393. The Fifth Circuit cautions against "sacrificing the true statutory purpose behind fair and full review for an unfortunate adherence to counterproductive technicalities." *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 655 (5th Cir. 2009) (internal quotations omitted).

First, Jackson argues that he was denied a "full and fair" review because the ERISA notification procedure must provide, at minimum "any internal rule, guideline, [or] protocol" used in making the adverse decision. Dkt. 25 at 9 (citing 29 C.F.R. § 2560.503-1(f)(1)(iii)). The AMA

Guide is certainly not "internal" to the NFL Plan, but rather a publication of the American Medical Association. Dkt. 26 at 5. Therefore, the court finds that the defendants' failure to provide Jackson with a copy of the AMA Guide is not a violation of this regulation.

Second, Jackson argues that he should have been "advise[d] . . . he was entitled to a free copy of the guide" because it was "relevant" to his claim. Dkt. 25 at 10. Both of the letters setting forth the reasons for the denial of Jackson's disability benefits noted that the Plan relies on the AMA Guide for evaluating orthopedic impairments. Dkt. 21-3 at 43, 318–19. Jackson was put on notice that a publically available medical reference guide was used in evaluating his claim in the letters that he received from the Plan. *Id*. Because the denial letters identified the AMA Guide as part of the rationale for the adverse decision, the court finds the letter was written in a manner calculated to be understood by Jackson as required by ERISA procedures. *Killen*, 776 F.3d at 310. Not providing the publically-available guide itself is a technicality and did not deprive Jackson of the opportunity to understand the specific grounds for the denial of his claim. *Id*. The court finds that the failure of the defendants to provide Jackson a copy of the AMA Guide did not substantially prevent "full and fair" review of the denial of his claim.

Further, the court observes that now Jackson is fully aware of how the Combined Values Chart is used to calculate the combined WPI and that his resulting WPI is below the minimum threshold to qualify for benefits. Yet, Jackson is still prosecuting this claim in the district court. Therefore, a remand will not achieve the purpose of resolving a dispute at the plan administrator level. *Robinson,* 443 F.3d at 393

The court concludes that a remand would be both futile and is not necessary to achieve substantial compliance with the ERISA procedures for a full and fair review. Jackson's motion to remand the claim to the plan administrator is DENIED. Dkt. 25 at 9.

## IV. Conclusion

Jackson's motion to supplement the administrative record is DENIED. Dkt. 22

The defendants' motion for judgment based on the administrative record is GRANTED. Dkt. 21. Jackson's claims are DISMISSED WITH PREJUDICE. The defendants' request for leave to request attorneys' fees is GRANTED. *Id*.

Jackson's motion to remand the claim to the plan administrator is DENIED. Dkt. 25 at 9. Signed at Houston, Texas on June 14, 2017.

_____
Gray H. Miller
United States District Judge